**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

RAYMOND LIZANA                                                    **PLAINTIFF**

VS                                        **CASE NO. 1:08-CV-501-LTS-MTP**

**STATE FARM FIRE & CASUALTY COMPANY**                      **DEFENDANT**

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT'S EXPEDITED MOTION TO
QUASH PLAINTIFF'S NOTICES OF 30(b)(6) and 30(b)(6) IT VIDEO
DEPOSITION AND ISSUANCE OF DEPOSITION SUBPOENA DUCES TECUM
OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER**</u>

**I.      FACTUAL BACKGROUND**

1.  On or about February 18, 2009, the parties engaged in a Case Management Conference wherein Plaintiffs' counsel sought to address electronic discovery matters early in the case management by submitting its proposed Case Management Order specifically identifying topics regarding Electronically Stored Information (ESI) and submitting an attached Exhibit A, IT Questionnaire.  (Exh. A, Plaintiffs' Proposed Case Management Order.)

2.  During the Case Management Conference, Defendant was not required to answer the IT Questionnaire, as the Court determined that the information sought could be sought in discovery requests or 30(b)(6) depositions.

3.  On or about February 6, 2009, Plaintiffs served discovery requests to Defendant, which contained numerous requests for information regarding Defendant's first party property claims handling procedures, the investigation and handling of Plaintiffs' claims, and Defendant's data storage systems, retention policies and

procedures, and communication transmittals, among other requests seeking relevant information and data.

4. Pursuant to Rule 34 Requests for Production, Plaintiffs requested electronic data production in a specified format, as detailed in the sections, Instructions and Definitions, preceding the Specific Requests. (Exh. B, Plaintiffs' Request for Production)

5. Defendant again refused to respond to numerous requests for information regarding its document retention and storage, communication transmittals, first party claims handling procedures and information and documents related to the investigation and handling of Plaintiffs' claims.

6. On or about April 24, 2009, Defendant sent email correspondence to Plaintiffs' counsel disclosing Defendant had produced some Claims Service Records (CSR) with some fields "masked." (Exh. C, Email Correspondence re masking.)

7. Plaintiffs have taken the deposition of engineers hired by Defendant to inspect the Marion S. Lebon and Lisa Cowand property four years after Hurricane Katrina. At the depositions of engineers from The Structures Group, Deponent Michael Matthews, P.E., discussed communications with State Farm through the use of FileZilla, email, document repository access, FTP, and other electronic data communicating and sharing systems. (Exh. D, Excerpts of Matthews Deposition)

8. Plaintiffs have taken the deposition of Pilot Catastrophe adjuster, Curtis Hilgersom, who testified that he had a laptop and digital camera issued to him with an ID No. by State Farm. After he finished his inspections he returned the laptop, digital camera and all paper files to State Farm. The Plaintiffs' Claim file,

printed from the CSR database and furnished by State Farm in response to Plaintiffs' Requests for Production is incomplete and contained unexplained changes and documentation.  Mr. Hilgersom could not determine if he took the photographs produced by State Farm from two separate site visits, even after he determined that he only made one site visit.  Had these photographs been produced in native electronic format as requested by Plaintiffs, the metadata would have disclosed this relevant information.  Counsel for State Farm offered to provide a 30(b)(6) deponent for further inquiry into how the electronic claim file was utilized and changes documented. (The deposition transcript is not yet received from the Court Reporter—Exhibit E, Deposition Excerpts of Hilgersom, will be supplemented.)

9. Emails produced in Marion S. Lebon and Lisa Cowand v. State Farm Fire & Casualty Company have come from the State Farm department regarding mediation.  These emails request movement of the Lebon electronic file from one database to another. (Exh. F, Emails produced in Marion S. Lebon and Lisa Cowand v. SFFCC).

10. A review and comparison of documents produced in Lebon v SFFCC, and represented as the Plaintiffs' "underwriting file" and documents produced by State Farm in New Light Baptist Church (NLBC) v State Farm Fire & Casualty Company and represented as NLBC's "underwriting file" show printed reports from the PDQ database in the format of screen shots in one production and not the other.  (Exh. G, PDQ Reports in NLBC v SFFCC.)

11. A review of the claim file produced by State Farm in the pending Raymond Lizana v State Farm Fire and Casualty Company contains date entry discrepancies, as well as, misinformation.

12. On or about October 30, 2009, Plaintiffs filed 30(b)(6) Notices regarding Defendant's First Party Claims Handling Practices and Procedures and regarding Defendant's document retention policy and procedures, data storage systems, and communication transmittal systems, as well as other relevant topics.

13. On or about November 3, 2009, Defendant sent a letter to Plaintiffs' counsel objecting to the 30(b)(6) deponent requests. (Exh. A to Defendant's Motion)

14. On or about November 5, 2009, Plaintiffs sent their Good Faith correspondence to Defendant to attempt to have Defendant cure its deficient discovery responses. (Exh. H, Good Faith Correspondence with enclosures.)

15. On or about November 5, 2009, Plaintiff sent responsive correspondence to Defendant clarifying the 30(b)(6) requests.    (Exh. I, Correspondence with enclosures.)

16. Plaintiffs submit that inquiry into the topics specifically outlined and detailed in their 30(b)(6) Notices are carefully drafted to determine where responsive data can be located in the most efficient time and manner, and what types of software or additional information may be required to access relevant information necessary for Plaintiffs to prepare their case.

17. Plaintiffs submit that 30(b)(6) depositions of persons most knowledgeable regarding the Defendant's First Party Property Claims Handling Procedures and Processes, including the proper documentation of the policyholders' claims file,

4

and Defendant's electronic document creation, retention, transmission, and storage systems and operational flow will assist in the narrowing the search and production of relevant, responsive information.

18. There are similar pending Motions to Quash, or in the Alternative for a Protective Order, in two other cases being litigated by the firms that are parties to this motion, *Marion S. Lebon and Lisa Cowand v. State Farm Fire & Casualty Company,* 1:08-cv-509-LTS-RHW and *New Light Baptist Church v. State Farm Fire & Casualty Company,* 1:08-cv-560-HSO-RHW.

## II.    LEGAL STANDARDS AND ARUGUMENT

### a.    Scope of Discovery

#### i.    Federal Rule 30(b)(6) Deposition

Federal Rule 30(b)(6) allows a party to notice a deposition of a corporation, partnership, association, governmental agency, or other entity and to specify the areas of inquiry.  *See McBride v. Medicalodges, Inc.,* __F.R.D. __ (D. Kan. 2008) (for Rule 30(b)(6) to function properly, areas of inquiry must be designated with "painstaking specificity").  In its Motion to Quash, Defendant points to the detailed itemized topics and sub-topics which serve to clarify exactly what topic Plaintiffs wish to inquire.  Further, Plaintiffs have provided a detailed list of definitions to assist counsel and the 30(b)(6) deponent as those terms relate to the inquiry.  Though, Defendant chooses to misrepresent Plaintiffs detailed areas of inquiry as being overly broad, Plaintiffs submit that the detail crafted in their 30(b)(6) Notice describes the areas of inquiry with "painstaking specificity" as required by Federal Rule 30(b)(6).

In accordance with Federal Rule 30(b)(6), the named organization must designate one or more representatives to testify as to the areas of inquiry. Plaintiffs have expressed on numerous occasions their need for 30(b)(6) deposition in the Noticed areas of inquiry. The representative(s)' testimony will be admissible against the organization and the organization must prepare the witness to testify as to the organizations' collective knowledge and information. If no single individual can provide the corporation's testimony as to all the designated topics, the corporation must name more than one representative. *See Great American Ins. Co. of New York v. Vegas Const. Co., Inc.,* __ F.R.D. __ (D. Nev. 2008); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.,* 242 F.R.D. 1 (D.D.C. 2007).

### ii. Relevancy

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any matter, not privileged, that is "relevant to the claim or defense of any party." For good cause shown, a court may order discovery of any matter relevant to the subject matter involved in the action. Fed. R. Civ. P. 26(b)(1). In addition, relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

The concept of relevance is to be broadly construed, and is viewed according to the facts and circumstances of each individual case. *See Parente v. Aetna Life Ins. Co.,* 2001 U.S. Dist. LEXIS 1919 (E.D. Pa. 2001). "Liberal discovery is permitted in federal court to encourage full disclosure before trial." *White v. Kenneth Warren & Son, Ltd.,* 203 F.R.D. 364 (N.D. Il. 2001). *See also Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp.,* 51 F.R.D. 98 (S.D.N.Y. 2001).

6

Plaintiffs have requested documents and information regarding Defendant's First Party Property Claims Handling Procedures and Processes, including the proper documentation of the policyholders' claims file, which directly relates to the claims of Plaintiffs and the defenses of Defendant. Further, information regarding Defendant's electronic document creation, retention, transmission, and storage systems and operational flow is information that is reasonably calculated to lead to the discovery of admissible evidence.

A Request for Production may inquire about any manner, not privileged, relevant to the subject matter of the action. Fed. R. Civ. P. 26(b)(1); *Cook v. Greyhound Lines, Inc.*, 847 F. Supp. 725, 736-737 (D. Minn. 1994) (discovery is not limited solely to admissible evidence, but extends to any information relevant to the information. This includes matters relating to the claim or defense of the party seeking discovery or to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter.) *Id.* citing Fed. R .Civ .P. 26(b)(1).

### iii. Reasonably Calculated to Lead to Discovery of Admissible Evidence

Under Federal Rules of Civil Procedure Rule 26(b)(1) "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Self v. American Home Assurance Co.*, 51 F.R D. 222, 223 (N.D. Miss. 1970). Relevant matters are not limited to the exact issues framed by the pleadings or to the merits of either party's case. *Stabilus v. Haynsworth*, *Baldwin, Johnson & Greaves*, 144 F. R .D.

258, 263 (E.D. PA 1992)(If answer might serve some legitimate purpose, such as leading to evidence or narrowing issues, interrogatories should be answered.)  Federal Rules of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable then it would be without the evidence."

The location of electronically stored data is best identified by a flow chart showing all of the related databases and the interactions among them, as well as, the data input terminals and their various locations.  User manuals for these databases will allow for the determination of the best method for retrieval of relevant data from these databases using the interfacing, reporting and/or indexing capabilities of each database.

Further, document retention and destruction policies will assist in determining whether relevant electronic data was properly preserved, and whether lost or destroyed data may still be accessible on back-up tapes or other storage media.

### iv.  Burden is on the Objecting Party

In Defendant's Motion to Quash, or in the Alternative for a Protective Order, Defendant asserts many blanket objections such as irrelevancy, attorney work product, attorney client privilege and/or the requests are overly broad and burdensome.  The Court should not allow Defendant to shift its burden to the Plaintiff to overcome Defendant's conclusory objections.  Plaintiffs have shown that the requested information is relevant or likely to lead to the discovery of admissible evidence.  Any objection, such as lack of relevance, puts the burden on the objecting party to prove its position.  *See Scott v. Leavenworth Unified School District No. 453,* 190 F.R.D. 583 (D. Kan. 1999)(explaining that, when discovery appears relevant, the party resisting discovery has the burden to

show the lack of relevance or that its marginal relevance is outweighed by the potential harm which could arise from the discovery). *See also Kimbro v. I.C. Sys.,* 2002 U.S. Dist. LEXIS 14599, at *2 (D. Conn. Jul. 22, 2002) (citation omitted) (Discovery is normally allowed into any matter that bears upon the issues or reasonably could lead to relevant information.).

The party asserting the work product doctrine has the burden of demonstrating that the subject documents are work product. *Elkins v. District of Columbia,* __F.R.D. __(D.D.C. 2008); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466 (S.D. N.Y. 2003). The work product protection applies only to documents prepared in anticipation of litigation. *See In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998); *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.,* 242 F.R.D. 357 (E.D. Tex. 2007) (litigation need not be imminent, but litigation must have been the "*primary motivating purpose*"); *U.S. ex rel Fago v. M & T Mort. Corp.,* 235 F.R.D. 11, 16 (D.D.C. 2006)("In anticipation of litigation" contains two related, but nevertheless distinct, concepts. One is temporal. The other is motivational.") The work product protection is a qualified immunity, not an absolute privilege. *See In re Perrigo Co.,* 128 F.3d 430, 437 (6th Cir. 1997) (noting that the work product doctrine creates a qualified immunity rather than a privilege); *In re Sealed Case,* 146 F.3d 881, 884 (D.C. Cir. 1998).

Federal Rule 26(b)(5) requires a party asserting a privilege to produce a privilege log describing the documents withheld. *See DL v. District of Columbia* __F. Supp. 2d __ (D.D.C. 2008)(the obligation to describe the nature of the privilege is met through a privilege log); *Weiss v. National Westminister Bank,* PLC, 242 F.R.D. 33 (E.D. N.Y. 2007)(failure to include sufficient information on a privilege log can result in waiver). In

regard to the many Operation Guides that Defendant continues to withhold and assert privileges of Proprietary and Trade Secret, even with a Protective Order in place, a Privilege Log would better identify those documents held in the databases and archives of State Farm.  Even more efficient, would be to ask someone in record keeping and/or record management to print an index of the various Operation Guides and Versions, rather than a collective effort among previous litigants that have been fortunate enough to gain a few of the Operation Guides.  See Exhibit J, Composite Lists of Operation Guides and Training Manuals.

Defendant has continuously refused to produce documents and information related to the investigation of Plaintiffs claims for damages. Defendant asserts claims of work product and attorney client privilege over documents and information regarding the investigation and adjustment of Plaintiffs' claims, even though those investigations and adjustments were made in the usual course of the insurance business and not in anticipation of litigation.  Plaintiffs are entitled to all information and data regarding State Farm's decision to pay or not pay Plaintiffs' claims, including engineering reports and inspection reports and data provided to State Farm prior to and during the course of litigation as this information relates to the decision of State Farm to pay or deny Plaintiffs' claims.

Otherwise discoverable trial preparation material and work product materials must be produced in discovery when the information contained there is not reasonably available from any other source. *See Hickman v. Taylor,* 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947).  Moreover, the work product protection does not apply to documents prepared in the regular course of business while litigation is pending. *See Burton v. R. J.*

*Reynolds Tobacco Co.,* 177 F.R.D. 491 (D. Kan. 1997) (documents must pertain to a specific claim or potential litigation, particularly for an insurance company whose entire business involves claims.)

Discovery pertaining to an expert who acquired his knowledge and facts through witnessing or participating in the events that form the basis for the complaint is not covered by Federal Rule 26(b)(4), which is limited to information acquired or developed in anticipation of litigation. *See Battle ex rel. Battle v. Memorial Hosp. at Gulfport,* 228 F.3d 544, 551 (5th Cir. 2000); *Essex Builders Group, Inc. v. Amerisure Ins. Co.,* 235 F.R.D. 703 (M.D. Fla. 2006). Therefore, full fact discovery is allowed regarding such experts.

Federal Rule 26(c) authorizes the court to enter an order restricting disclosure of trade secrets or confidential research, development, or commercial information obtained during discovery. *See Massey Coal Services, Inc. v. Victaulic Co. of America,* __F.R.D. __ (S.D. W. Va. 2008)(listing the factors for protection of trade secret or confidential information). There is no absolute privilege or protection with respect to such matters. *See Federal Open Market Committee of Federal Reserve System v. Merrill,* 443 U.S. 340, 99 S. Ct. 2800, 61 L. Ed. 2d 587 (1979); *Sprinturf, Inc. v. Southwest Recreational Industries, Inc.,* 216 F.R.D. 320 (E.D. Pa. 2003)(the party seeking the order must show that the information sought is a trade secret or other confidential information protected by Federal Rule 26(c)(1)(G), and that good cause exists to prevent disclosure of this information).

Even though, Defendant has a Protective Order in place for Trade Secrets and Proprietary information, Defendant has the burden and must show that the information

that it is seeking to withhold or protect from disclosure qualifies as Trade Secret or Proprietary information, and/or attorney client privilege. Plaintiffs seek to inquire as to the discovery responses made by State Farm. The numerous deficient responses withheld or objected to as attorney client and/or work product based upon the proposition that the attorney worked with the client to formulate the response is not defensible. In *Cunningham v. Standard Fire Insurance Co.,* 2008 WL 2668301 (D. Colo. July1, 2008), the plaintiff homeowner sued the defendant insurance company for bad faith and breach of contract. The defendant objected to several proposed topics of inquiry in the plaintiff's Rule 30(b)(6) Notice of Deposition and moved for a protective order. The court reviewed the proposed topics in detail and restricted the inquiry into the defendant's information management procedures in general, and on email backup procedures for certain named employees in particular, on relevance grounds. However, the court allowed inquiry into the defendant's discovery response activities, refusing to grant a blanket protective order on the basis of non-specific and conclusory claims of attorney client privilege and work product protections.

Further, the party seeking the protective order has the burden of showing that good cause exists by stating particular and specific facts. *See Phillips ex rel. Estates of Byrd v. General Motors Corp.,* 307 F.3d 1206, 1211, (9th Cir. 2002); *Fausto v. Credigy Services Corp.,* __F.R.D. __ (N.D. Cal. 2008) (broad allegations of harm, without specifics, do not satisfy the burden). Defendant cannot assert blanket objections without a specific showing of good cause.

### v.  The Entire Claim File is Relevant

The entire claim file for Plaintiffs' claim is a crucial piece of evidence in this bad faith case. The entire claim file would include all claim files, including electronic claim files kept in the various databases.  Defendant has only produced portions of the Claim Service Record (CSR) for the Homeowner's file and the Flood file, the Underwriting, and in some cases the Regional file from Birmingham.  However, there are several other databases containing files that may have differing information, which would require production of all to make up the whole or entire claim file, which would allow the Plaintiffs to properly prepare their case.  Other Courts and commentators around the country have noted the importance of the claim file in a bad faith insurance claim. *See, e.g. Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154 (Ohio 2001); *Silva v. Fire Ins. Exch*., 112 F.R.D. 699 (D. Mont. 1986) (insured may compel insurer to disclose entire claims file and may offer contents as exhibits at trial because bad faith can only be proved by showing manner in which claim was processed and claims file is sole source of this information); *Bergeson v. Nat'l Security Corp.*, 112 F.R.D. 692 (D. Mont. 1986); *see also* Garrity, *Discovery of an Insurer's Files: Now You See It, Now You Don't*, 20 Forum 20 (1984); Harley, *Accessing Insurance Company Claim Files*, 65-SEP Wisc. Law. 10 (1992); Kaplan, *Discovery of Claim Files in Bad Faith Litigation*, 33:2 For the Defense 9 (1991); Workman, *Plaintiff's Right to the Claim File, Other Claims Files and Related Information: The Ticket to the Gold Mine*, 24 Tort & Ins. L.J. 137 (1988).

In this case, the documents and 30(b)(6) inquiries sought are relevant to both the claims of Plaintiffs and the defenses of State Farm.  State Farm cannot, on the one hand, assert that the claim is barred by alleging exclusionary language of the policy, and at the

same time assert that Plaintiffs are not entitled to discovery of documents to refute the availability of the defense.

### vi. Information Regarding Software used to Evaluate Plaintiffs' Damages is Discoverable

Information regarding Xactimate estimating program, the pricing lists used in the Xactimate estimating program and the training of adjusters regarding the use of the Xactimate estimating program is relevant and discoverable and should be produced. In *Opperman, et al. v. Allstate New Jersey Ins. Co., et al.,* 2008 WL 5071044 (D.N.J. Nov. 24, 2008), plaintiff challenged the defendant insurer's property loss estimates. The court ordered the production, in an accessible form, of proprietary software owned by a non-party and licensed to the insurer. The court found that the software was relevant to the plaintiff's claims and that an existing confidentiality order would protect the trade secret nature of the software. The court also rejected the proposition that a non-party could prohibit production of the software.

In another Hurricane Katrina action in the Eastern District of Louisiana, State Farm was ordered to supplement information it withheld regarding the Xactimate estimating program and the pricing lists used in the New Orleans region. The Honorable Magistrate Judge Chasez ordered State Farm to produce the withheld information and pricing lists. *See Donnie Elizabeth Luts Young v. State Farm,* CDC, No. 2006-9530, Div. H-12.

### b. Electronic Data Discovery

### i. Scope of Discovery

Federal Rules of Civil Procedure 34 governs the production of documents, electronically stored information, and tangible things within the scope of Federal Rules of

14

Civil Procedure 26(b).  Federal Rules 26(b)(1) explicitly authorizes discovery about the location and existence of documents and other evidence and about the identity and location of persons having knowledge of discoverable matters.

Federal Rules 34 further permits the requesting party to designate the form or forms in which it wants electronically stored information produced.  Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information.

**(a) In General**.  A party may serve on any other party a request within the scope of Rule 26(b):

(1) To produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or

**(b) Procedure.**

(1) *Contents of the Request.* The request:

(C) May specify the form or forms in which electronically stored information is to be produced.

(2) *Responses and Objections.*

(D) Responding to a Request for Production of Electronically Stored Information.  The response may state an objection to a requested form for producing electronically stored information.  If the responding party objects to a request—the party must state the form or forms it intends to use.

(E)   Producing the Documents or Electronically Stored Information.  Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii)  If a request does not specify a form for producing electronically stored information, a party must

15

produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

Federal Rule 34 recognizes that different forms of production may be appropriate for different types of electronically stored information. Using current technology, for example, a party might be called upon to produce word processing documents, e-mail messages, electronic spreadsheets, different image or sound files, and material from databases. Therefore the rule provides that the requesting party may ask for different forms of production for different types of electronically stored information. Plaintiffs have specified the format of production for electronically stored information. *See* Exhibit A. Defendant has not produced the requested data in the requested form. A deposition of a 30(b)(6) IT deponent will assist in the resolution of this matter in an timely and targeted manner.

In the written response to the production request that Federal Rule 34 requires, the responding party must state the form it intends to use for producing electronically stored information if the requesting party does not specify a form or if the responding party objects to a form that the requesting party specifies. Stating the intended form before the production occurs may permit the parties to identify and seek to resolve disputes before the expense and work of the production occurs. A party that responds to a discovery request by simply producing electronically stored information in a form of its choice, without identifying that form in advance of the production in the response required by Federal Rule 34(b), runs a risk that the requesting party can show that the produced form is not reasonably usable and that it is entitled to production of some or all of the

information in an additional form.  Defendant has not asserted any objections to the specified format requested by Plaintiffs.  *See* Defendant's Responses within Exhibit H, Good Faith Correspondence.

Federal Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form.  Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information.  If the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature.  Without regard to Plaintiffs' specified format of production, Defendant has produced non-searchable .pdf images of electronic data.  Further, Defendant has not correlated these Bates Labeled, non-searchable .pdf images to correspond to Plaintiffs' specific requests.  A 30(b)(6) IT deponent will be necessary for Plaintiffs to obtain their requested format of electronically stored information.

In *Bray & Gillespie Management LLC, et al. v. Lexington Ins. Co., et al.,* No. 6:07-cv-222-Orl-35KRS, the owner and operator of resorts in Florida filed suit against its insurer to recover damages to its properties caused by three hurricanes.  The insurance company disputed whether damages claimed were the result of three separate "occurrences" under the policy.  The plaintiff, in preparation for litigation, downloaded ESI in native format, converted it to TIFF images and, in the process, failed to capture relevant metadata.  The defendants objected to the plaintiff's production of the TIFF images and moved to compel production of ESI in native format.  Deciding this latest

series of motions by the defendants, the court held that the production was not in the form requested by them, that the ESI was not in a reasonably useable form, that the plaintiff and its attorney concealed information and made material misrepresentations, and that monetary and other sanctions were warranted against the plaintiff and various of its attorneys.

Defendant's refusal to discuss and provide electronically stored information in a usable format has needlessly burdened the Plaintiffs in the discovery of relevant, responsive information and data. Electronic data is searchable and contains relevant information embedded as metadata. The removal of metadata in converting electronically stored information into .pdf images, as done by Defendant in it production to Plaintiffs, destroys and spoliates relevant, discoverable data that the Defendant has a duty to preserve and produce.

Defendant's claims that it cannot produce certain categories of data requested by Plaintiffs, such as that data that relates to claims handling complaints and/or specific categories, such as slab claims, in Mississippi from 2005, is or should be possible through the right report run or entry request from the database that holds that information. A 30(b)(6) IT and/or Claims Handling representative should be able to determine the best method of pulling this or any other categorized request from the databases in State Farm's electronic data storage systems.

In *Zurich American Insurance Co. v. Ace American Reinsurance Co.,* 2006 U.S. Dist. LEXIS 92958 (S.D. N.Y. Dec. 22, 2006), a reinsurance action alleging bad faith

failure to pay claims, the plaintiff sought production of documents related to a particular category of claim denials. The defendant objected, stating that it was unable to segregate claim files by category of claim denial. The court expressed "little sympathy" for a defendant with an "opaque data storage system" and ordered the parties to devise a protocol for sampling the data.

### ii.  Duty to Preserve and to Locate Electronic Data

The source of pre-discovery obligations to preserve potential sources of discoverable electronically stored information is found in common law. *See Silvestri v. GM,* 271 F.3d 583 (4th Cir. 2001).  The duty to preserve applies to any and all relevant documents, tangible things, or electronic information in the possession, custody, or control of a party no matter where located.  *See Leon v. IDX Systems,* 464 F.3d 951, 955-957, 961 (9th Cir. Sept. 2006)(upholding sanction against a terminated whistleblower plaintiff who had deleted data from his company-furnished laptop).  The knowledge or belief that litigation has begun or is imminent "triggers" preservation obligations and requires that reasonable steps be undertaken to maintain relevant and discoverable information pending discovery, including third party discovery. *See In re Napster, Inc. Copyright Litigation,* 2006 WL 305086 at *6 (N.D. Cal. Oct. 25, 2006)(service of and compliance with a non-party subpoena is not necessarily sufficient notice of future litigation).

After the deposition of Curtis Hilgersom and other independent adjusters hired by State Farm, it is apparent that State Farm issues company owned laptops and digital

cameras to independent adjusters.  This electronic equipment has a serial number which is logged as being checked out to an adjuster through the adjuster's ID number.  In the instance of Mr. Hilgersom, one of the Pilot adjusters on the Lebon v SFFCC claim, had the photographs been produced in native electronic form, Plaintiffs would have the additional relevant data that they are entitled too, for example, the number of photos taken, the date the photos were taken, the camera the photos were taken with and format the photos were taken in.  Further, had the information on the laptop of Ida McAllister of Pilot been properly persevered, the information regarding the inspection she took in late September, 2005 would be available for Plaintiffs to determine what information State Farm relied upon to deny Plaintiffs claims and why State Farm hired another Pilot adjuster, Mr. Hilgersom, to perform a second inspection.  A 30(b)(6) IT deponent and a person most knowledgeable regarding State Farm's claims handling process and procedure, including the documentation of Plaintiffs' claims file will be necessary to obtain this information and to determine whether information was properly preserved and now available.

The Committee Notes to Federal Rule 26(b)(2) and Federal Rule 37(e) make clear that preservation obligations may apply even when electronically stored information is located on an inaccessible source.  The Note to Federal Rule 26(b)(2) provides that "a party's identification of sources of electronically stored information as not reasonably accessible does not relieve that party of its common-law or statutory duties to preserve evidence."  Moreover, the Note to Federal Rule 37(e) instructs that parties may not "exploit the routine operation of an information system to thwart discovery obligations by

allowing that operation to continue in order to destroy specific stored information that it is required to preserve."

An organization should consider all data sources within its "possession, custody, and control" that are likely to include relevant, unique information. *See The Sedona Conference Commentary on Legal Holds: The Trigger & the Process* (August 2007 Public Comment Version). This includes data sources within the physical possession of the organization, and other sources within the possession or custody of third parties, pursuant to contractual or other relationships, such as information held by Application Service Providers (ASPs) and other service providers. *Id.* This would also include information in the possession of independent adjusters, such as Pilot, and engineers such as the Structures Group, WJE and other experts that are in the control of State Farm pursuant to a contractual or other relationship.

Many organizations assign the lead coordination role for e-discovery to their Legal Department, which collaborates with IT, compliance, and records management departments or functions. *See Zubulake v. UBS Warburg,* 229 F.R.D. 422, 435 (S.D. N.Y. 2004)(*Zubulake V*") ("counsel [both employed counsel and outside counsel] [are] responsible for coordinating her client's discovery efforts.  In this case counsel failed to properly oversee UBS in a number of important ways, both in terms of its duty to locate relevant information and its duty to preserve and timely produce that information").

Defendant's continued refusal to discuss and produce relevant information regarding Defendant's documents retention policies and electronic data storage systems are cause for great concern regarding the preservation and location of potentially relevant, responsive information and data regarding Plaintiffs' claims and Defendant's

defenses.  Plaintiffs would like to know what steps Defendant has taken to identify, locate and preserve potentially relevant electronically stored information and data.

In *Phoenix Four, Inc. v. Strategic Resources Corp.,* the court sanctioned a party and its law firm for failure to locate inaccessible information because it did not conduct a "methodical survey of [Defendants] sources of information" in the manner said to be required by the 2006 Amendments.  Common nesting places for inaccessible data are back-up tapes, workstations, and other portable data storage devices, information sources that foreseeably will leave the entity's facilities in normal use or through hardware repurposing or retirement.  State Farm's practice of checking out laptops and digital cameras could be viewed as a practice of spoliating potentially relevant data if there is no defined way of preserving the data before the data is overwritten or lost.

In *Cache La Poudre Feeds v. Land O'Lakes*, the court sanctioned the failure to retain the hard drives of key former employees while questioning the basis for the General Counsel's belief that the relevant information could be found in a more readily accessible location, given that General Counsel was aware that the email backup tapes were not being retained, but were being recycled. 2007 WL 68401 (D. Colo. March 2, 2007).  A 30(b)(6) IT deponent will be necessary to determine whether or not State Farm properly preserves potentially relevant claims data prior to re-issuing laptops and digital cameras.

In *PML North America v. Hartford Underwriters Ins. Co.,* 2006 U.S. Dist. LEXIS 94456 (E.D. Mich. Dec. 20, 2006), a court order established a protocol for electronic discovery in an insurance-related fraud action.  The court later ordered the defendant to produce hard drives and other media for inspection by a computer forensic expert.  The

expert reported evidence of tampering and data spoliation, prompting defense counsel to admit in court that "it looks bad." While acknowledging counsel's candor, the court stated that "there is a point beyond which bumbling and blindness to a party's discovery obligations sufficiently resemble the sort of willful, intentional and malicious conduct that calls for the heavy sanction of judgment by default." The court granted the plaintiff partial summary judgment.

### III.    CONCLUSION

Plaintiffs contend they are entitled to information regarding and production of Plaintiffs' entire claims file, including correspondence, emails, investigative reports, training manuals, company policies and philosophies, factual evidence gathered from investigations used to deny Plaintiffs' claims and any other non-privileged and/or non-protected information known to the Defendant. Plaintiffs request that this Court compel the Defendant to designate the person(s) most knowledgeable in the topics specifically outlined in Plaintiff's Notices of 30(b)(6) depositions and to produce those documents requested pursuant to Federal Rule 30(b)(2).

WHEREFORE PREMISES CONSIDERED, Plaintiff, Raymond Lizana, requests that this Court deny State Farm's Motion to Quash and Motion for Protective Order and grant his request for a 30(b)(6) deponent(s) which can, at a minimum, speak to those topics outlined in Plaintiff's Notices of 30(b)(6) Deposition. Plaintiff further requests that this Court require the requested documents to be produced pursuant to 30(b)(2) prior to or at the deposition.

Respectfully, submitted, this the 10th day of November, 2009.

> _/s/Deborah R. Trotter_
> Deborah R. Trotter, Esquire
> MS Bar# 101360
> MERLIN LAW GROUP, P.A.
> 368 Courthouse Road, Suite C
> Gulfport, Mississippi  39507
> Telephone:      228-604-1175
> Facsimile:      228-604-1176
> dtrotter@merlinlawgroup.com

## CERTIFICATE OF SERVICE

I, DEBORAH R. TROTTER, do hereby certify that I have on this date electronically filed the foregoing document with the Clerk of Court using the ECF system, which sent notification of such filing to the following:

Hal S. Spragins
Hickman, Goza & Spragins
P.O. Drawer 668
Oxford, MS  38655
sspragins@hickmanlaw.com

This the 10th day of  November, 2009.

/s/Deborah R. Trotter
Deborah R. Trotter, MSB #101360

Merlin Law Group, P.A
368 Courthouse Road, Suite C
Gulfport, MS  39507
Telephone (228) 604-1175
Fax (228) 604-1176
Email:  dtrotter@merlinlawgroup.com